PURVIS SYSTEMS, INC.

v.

AMERICAN SYSTEMS
CORPORATION.

No. 99–290–Appeal.

Supreme Court of Rhode Island.

Jan. 24, 2002.

Robert M. Duffy, Christine K. Ahern, Providence, for Plaintiff.

Charles S. Kirwan, Pawtucket, for Defendant.

Present WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

Is an arbitrator in a commercial dispute barred from awarding attorney's fees if the parties' contract provided that "all expenses of the arbitration" be assessed against the losing party? In this case, a justice of the Superior Court vacated a supplemental award of attorney's fees and costs after the arbitrator amended an award that did not include attorney's fees in the expenses awarded. In accordance with the strong public policy in favor of the finality of arbitration awards, we reverse the judgment of the Superior Court and reinstate the arbitrator's awards.

### Facts and Procedural History

In 1997, in response to a request for proposals by the Naval Undersea Warfare Center, Purvis Systems, Inc. (Purvis), American Systems Corporation (ASC), and two other companies submitted a joint proposal that designated Purvis as the general contractor and the other companies, including ASC, as the subcontractors. After Purvis was awarded the contract, it entered into a subcontract with ASC delineating the services that ASC was to provide under the Navy contract. A dispute developed between Purvis and ASC with respect to whether the subcontract guaranteed a "fixed level of effort" to ASC. In accordance with the terms of the subcontract, Purvis filed a demand for arbitration, a demand that was worded, in pertinent part, as follows:

"THE NATURE OF THE DISPUTE[:] Declaratory judgment action to determine the parties' respective rights under the [sub]contract.

"THE CLAIM OR RELIEF SOUGHT (the Amount, if any): Determination of each party's rights under the [sub]contract."

A counterdemand for arbitration was filed by ASC, seeking specific performance of the subcontract and damages.

In December 1998, two days of unrecorded hearings were held before a single arbitrator, who issued an award (the award) in favor of ASC after finding that "[p]er the subcontract, the fees and expenses of the American Arbitration Association ('AAA') and the fees and expenses of the arbitrator, totaling $8,608.50, shall be borne by Purvis." The award did not mention attorney's fees.

Upon receipt of the award, counsel for ASC, Joseph Billings (Billings), sent a letter to the American Arbitration Association (AAA) and Purvis's counsel via facsimile, pointing out that "it appears that the arbitrator inadvertently failed to address payment of attorneys [sic] fees." Christine Ahern, an attorney for Purvis, responded to Billings's letter the same day, denying that the subcontract's term "expenses of the arbitration" was intended to include attorney's fees. She wrote that "[i]f the parties had intended that attorney's fees could be awarded in addition to

arbitration expenses, such a provision would have been expressly included."

In response, Billings telefaxed a second letter to the AAA, claiming that "[t]he parties both understood the subcontract to require payment of attorney's fees. At the close of the arbitration hearing, Robert Duffy [an attorney for Purvis] pointed out to the arbitrator that the subcontract called for the losing party to pay attorney's fees. I told the arbitrator that I agreed with Mr. Duffy." Robert Duffy responded by disputing ASC's version of events in a letter to the AAA: "At the close of the arbitration proceeding, I pointed out to the arbitrator that the 'costs of arbitration' are recoverable by the prevailing party. Costs of arbitration do not include attorneys' fees, and the parties neither intended nor understood that to be the case."

In January 1999, the arbitrator modified the award to provide that "[e]xpenses of the arbitration include both reasonable attorney's fees and the costs of the [AAA]," (the modified award). One month later, the arbitrator issued a supplemental award, instructing Purvis to pay to ASC attorney's fees and costs in the amount of $24,288.10, (the supplemental award). Both Purvis and ASC submitted evidence on the issue of attorney's fees, and Purvis reserved its right to challenge any award of fees. The amount awarded by the arbitrator was approximately $3500 less than the amount Purvis estimated would constitute reasonable attorney's fees.

Purvis then filed a Superior Court miscellaneous petition to vacate the modified and supplemental awards, and after a hearing, ASC filed an objection to Purvis's motion to vacate and filed a cross-motion to confirm the awards. The hearing justice affirmed the arbitrator's initial award, but granted Purvis's motion to vacate the modified and supplemental awards, stat-

ing, "I find based on the insurmountable factual dispute here that there is no basis in the law and that the arbitrator by awarding legal fees has so imperfectly carried forward his responsibilities that that portion of the order should not, in fact, be sustained or confirmed." After an order was entered, ASC filed a motion for reconsideration and objection, along with an appeal, pursuant to G.L.1956 § 10–3–19, challenging the vacating of the modified and supplemental awards. The Superior Court judgment provided in pertinent part:

> "[The modified and supplemental awards] are hereby vacated because (a) the Arbitrator manifestly disregarded applicable law and the terms of the Subcontract in awarding attorney's fees to [ASC] and (b) so imperfectly stated the basis for the award of attorney's fees that this Court cannot rule that the Arbitrator did anything but manifestly disregard the law and the terms of the Subcontract."

On appeal, ASC argued that in his review of the arbitration award, the hearing justice exceeded the court's limited authority under § 10–3–12 and our numerous holdings addressing the review of arbitration decisions.

## Standard of Review

This Court has consistently recognized that the role of the judiciary in the arbitration process is "extremely limited." *Romano v. Allstate Insurance Co.*, 458 A.2d 339, 341 (R.I.1983); *see also Prudential Property & Casualty Insurance Co. v. Flynn*, 687 A.2d 440, 441 (R.I.1996). Section 10–3–12 sets forth the narrow grounds on which an arbitration award must be vacated:

> "(1) Where the award was procured by corruption, fraud or undue means.

"(2) Where there was evident partiality or corruption on the part of the arbitrators, or either of them.

"(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in hearing legally immaterial evidence, or refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been substantially prejudiced.

"(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

 Moreover, under our caselaw, an arbitration award may be overturned if the award was irrational or if the arbitrator manifestly disregarded the law. *Flynn,* 687 A.2d at 442. We have emphasized, however, that the latter standard requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." *Westminster Construction Corp. v. PPG Industries, Inc.,* 119 R.I. 205, 211, 376 A.2d 708, 711 (1977) (quoting *San Martine Compania De Navegacion, S.A. v. Saguenay Terminals Ltd.,* 293 F.2d 796, 801 (9th Cir.1961)). For example, " '[a] manifest disregard of the law * * * might be present when arbitrators understand and correctly state the law, but proceed to disregard the same.' " *Id.* In sum, "[a]s long as the award 'draws its essence' from the contract and is based upon a 'passably plausible' interpretation of the contract, it is within the arbitrator's authority and our review must end." *Jacinto v. Egan,* 120 R.I. 907, 912, 391 A.2d 1173, 1176 (1978).

### Issue Subject to Arbitration

Purvis argued on appeal that the issue of attorney's fees was never submitted to the arbitrator, and therefore, the arbitrator exceeded his powers in rendering a decision on that issue. We reject this argument. The subcontract provided that

*"[a]ny controversy or claim* arising out of or related to this contract or breach thereof, shall be settled by binding arbitration in accordance with the rules of the [AAA]. The parties further agree that *all expenses of the arbitration* shall be assessed against the losing party, and that said expense may be added to any judgment that may be entered." (Emphases added.)

Not only did the subcontract call for the arbitration of "[a]ny controversy or claim" arising out of the subcontract, but in addition, Purvis's initial demand for arbitration sought a declaratory judgment "to determine the parties' respective rights under the contract." Nothing in the language of the subcontract or in Purvis's demand suggests that the arbitrator was precluded from addressing attorney's fees.

 Moreover, although the AAA's Commercial Arbitration Rules (AAA rules) do not explicitly mention attorney's fees, rule 43, entitled "Scope of Award," authorizes an arbitrator "[to] grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract." Therefore, the AAA rules, the arbitration clause in the subcontract, and Purvis's own demand for arbitration vested the arbitrator with broad authority to interpret the terms of the subcontract that provided in part: "The parties further agree that all expenses of the arbitration shall be assessed against the losing party, and that said expense may be added to any judgment that may be entered." Furthermore, we have held that "[t]he framing of the precise issue is a procedural problem"

that, as a matter of law, "should be left to the arbitrator." *Providence Teachers Union v. Providence School Committee*, 440 A.2d 124, 128 (R.I.1982). "As long as the agreement to arbitrate is valid and the subject matter of the dispute is arbitrable, the arbitrator may frame the issues to be decided." *Id.* Consequently, the arbitrator did not exceed his powers by addressing the issue of whether the subcontract term "all expenses of the arbitration" included attorney's fees. In so holding, we distinguish this case from *State v. Rhode Island Alliance of Social Service Employees, Local 580, SEIU*, 693 A.2d 1043, 1044 (R.I. 1997) (mem.) (hereinafter *SEIU*), in which this Court overturned an arbitrator's award of attorney's fees that we determined was "punitive in nature." None of our prior decisions, including *SEIU*, suggests that an arbitrator would be precluded from awarding attorney's fees if such an award was authorized by a contract between the parties.

### Modification of Award

■ On appeal, Purvis also challenged the power of the arbitrator to modify his initial award, citing the doctrine of *functus officio*. *See Colonial Penn Insurance Co. v. Omaha Indemnity Co.*, 943 F.2d 327, 331 (3d Cir.1991) (holding that "once an arbitration panel renders a decision regarding the issues submitted, it becomes *functus officio* and lacks any power to reexamine that decision"). As a preliminary matter, we note that the AAA rules do not bar arbitrators from their routine practice of modifying arbitration awards. Moreover, even if we were to apply the common law doctrine of *functus officio*, as suggested by Purvis, it would not bar the arbitrator's issuance of the modified and supplemental awards in this case. As the Third Circuit recognized in *Colonial Penn*, "the common law *functus officio* doctrine contains its own limitations." *Id.* at 332.

For instance, the doctrine does not bar an arbitrator from modifying an award "where the award does not adjudicate an issue which has been submitted, * * * [or][w]here the award, although seemingly complete, leaves doubt whether the submission has been fully executed." *Id.* (quoting *La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 573 (3d Cir.1967)).

■ In the instant case, the arbitrator's initial award directed Purvis to pay, "[p]er the subcontract, the fees and expenses of the [AAA] and the fees and expenses of the arbitrator." The award further stated, "This award is in full settlement of all claims and counterclaims submitted to this arbitration." Although "seemingly complete" on its face, the award omitted any mention of attorney's fees, a fact that left doubt, at least in ASC's estimation, over whether the arbitrator's function had been fully executed. This doubt was expressed in Billings's first letter to the AAA in which he questioned whether the arbitrator "inadvertently failed to address payment of attorneys [sic] fees." The arbitrator referred explicitly to this letter, as well as to subsequent letters of the parties' counsel, in setting out the basis for the modified award:

> "Joseph G. Billings * * * having requested a modification by two letters dated December 23, 1998, and Christine K. Ahern and Robert M. Duffy * * * having responded by letters dated December 23 and 29, 1998, respectively, [I, the undersigned arbitrator,] do hereby DECIDE and MODIFY my award."

Because the issue of whether the subcontract entitled the prevailing party to an award of attorney's fees was properly before the arbitrator and because the arbitrator failed to adjudicate that issue in the initial award, we are of the opinion that the *functus officio* doctrine did not bar the

arbitrator from modifying, and later supplementing, the award.

### Superior Court Judgment

Having determined that the issue of attorney's fees was properly before the arbitrator and that the arbitrator had the power to modify the initial award, we next examine whether the hearing justice appropriately vacated the modified and supplemental awards on the grounds that "(a) the Arbitrator manifestly disregarded applicable law and the terms of the Subcontract in awarding attorney's fees to [ASC] and (b) so imperfectly stated the basis for the award of attorney's fees that [the Superior] Court cannot rule that the Arbitrator did anything but manifestly disregard the law and the terms of the Subcontract."

We turn, first, to the hearing justice's finding that the arbitrator manifestly disregarded both the law and the terms of the subcontract by awarding attorney's fees to ASC. The subcontract between the parties provided that "[a]ny controversy or claim" would be settled by arbitration, with "all expenses of the arbitration" assessed against the losing party. After considering the letters from the parties' counsel, the arbitrator interpreted the term "[e]xpenses of the arbitration" to include both "reasonable attorney's fees and costs which arose as a result of preparing for and participating in this arbitration," as he indicated in the modified award. It was ASC's position that the arbitrator thereby implicitly resolved the factual dispute raised by the letters in favor of ASC and found that the parties had orally "stipulated" at the close of the arbitration that the term "all expenses of the arbitration" included attorney's fees. Purvis, on the other hand, disputed the existence of any such stipulation and asserted that "the arbitrator got it wrong. * * * [H]e mistook the term expenses to include attorneys' fees."

The hearing justice apparently agreed with Purvis's interpretation that "expenses" excluded attorney's fees, but he remained troubled by the factual dispute concerning the alleged stipulation:

> "Well, I will state categorically, that absent that factual issue [with respect to the alleged stipulation] there is no question in my mind that the law provides that expenses of an arbitration as utilized in the contract do not include legal fees.
>
> " * * *
>
> "That's why I stated almost as black letter law [that expenses do not include legal fees] save only for the agreement of the parties, which in my judgment would include a stipulation at the time of the hearing, and I have conflicting affidavits before me on that issue."

On appeal, ASC argued, *inter alia*, that the hearing justice "impermissibly substituted [his] *de novo* Subcontract interpretation in place of the arbitrator's interpretation." We agree.

Whether or not the hearing justice was correct in finding that the arbitrator misconstrued the terms of the subcontract, it is well-settled that a mistake of law, without more, does not provide a basis for vacating an arbitration award. *Westminster Construction Corp.*, 119 R.I. at 210, 376 A.2d at 711; *Loretta Realty Corp. v. Massachusetts Bonding & Insurance Co.*, 83 R.I. 221, 225, 114 A.2d 846, 848 (1955). For example, we have held that "parties who have contractually agreed to accept arbitration as binding are not allowed to circumvent an award by coming to the courts and arguing that the arbitrators misconstrued the contract or misapplied the law." *Flynn*, 687 A.2d at 441. In fact, "awards premised on 'clearly erroneous' interpretations of [a] contract have been affirmed where the result was ration-

ally based upon the contract." *Jacinto*, 120 R.I. at 912, 391 A.2d at 1176.

Moreover, we have no basis here for determining whether the arbitrator irrationally interpreted the subcontract term "all expenses of the arbitration" to include attorney's fees in the absence of a transcript from the arbitration proceeding and in light of ASC's assertion that the parties orally agreed before the arbitrator that they understood attorney's fees to be included in the term. *See Landers v. Mayhew*, 666 A.2d 1161, 1162 (R.I.1995) (mem.) (affirming arbitrator's award of "loss of rents, legal and architectural fees," in the absence of a transcript, where "the contract permitted the arbitrator to assess expenses against any party"). Although Purvis denied making such a stipulation before the arbitrator, the arbitrator alone as fact-finder had the authority to resolve that factual dispute. *Cf. Peloso v. Imperatore*, 434 A.2d 274, 277 n. 4 (R.I.1981) (deferring to trial justice's "finding of fact" that parties in an insurance case stipulated to the inclusion of legal fees in an award, despite absence of a written statement in the record). Therefore, in the case before us, the hearing justice erred in finding that the "conflicting affidavits" regarding the alleged stipulation provided a sufficient basis to vacate the arbitrator's modified and supplemental awards.

The hearing justice also erred to the extent that he viewed the arbitrator's failure to make explicit factual findings as a basis for vacating the attorney's fees. This Court has held that unless provided otherwise, "arbitrators of a commercial dispute, like a jury, are under no obligation to set out the reasons for their award or the findings of fact or conclusions of law on which that award is premised." *Westminster Construction Corp.*, 119 R.I. at 209, 376 A.2d at 710. To hold otherwise " 'would undermine the very purpose of

arbitration, which is to provide a relatively quick, efficient and informal means of private dispute settlement.' " *Id.*

We have previously pointed out that "[p]arties voluntarily contract to use arbitration as an expeditious and informal means of private dispute resolution, thereby avoiding litigation in the courts." *Aetna Casualty & Surety Co. v. Grabbert*, 590 A.2d 88, 92 (R.I.1991). The defining feature of the arbitral forum is the absence of the strictures—and the protections—of formal procedural and evidentiary rules. When private parties, acting on equal footing, voluntarily agree to arbitration with all its risks and benefits as their preferred method of settling disputes, courts should not undermine either the parties' choice or the statutory scheme by imposing specific evidentiary rulings and findings of fact for the purpose of judicial review. Indeed, § 10–3–10, entitled "Form and signature of arbitrators' award," requires only that "[t]he award must be in writing and must be signed by the arbitrators or by a majority of them," and nothing more. Consequently, the lack of explicit findings cannot form the basis for vacating the arbitrator's award.

## Conclusion

The limited scope of judicial review of arbitration awards by the Superior Court is essential to ensure that parties may benefit from arbitration as an informal, expedient alternative to litigation in the court system. In this case, there is no evidence that the arbitrator exceeded his powers or manifestly disregarded the law by awarding attorney's fees to ASC. Therefore, mindful of the strong presumption in favor of the validity of arbitration awards, we hereby sustain the appeal. We reverse the judgment of the Superior

Court and reinstate the arbitrator's modified and supplemental awards.